**In the Matter of John H. BROWN.**

**No. 98–328–M.P.**

Supreme Court of Rhode Island.

Aug. 19, 1999.

David Curtin, Chief Disciplinary Counsel, for petitioner.

Lise Gescheidt, C. Leonard O'Brien, Providence, for respondent.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This disciplinary matter is before the Court pursuant to a decision and recommendation of the Supreme Court Disciplinary Board (board) that the respondent, John H. Brown, be suspended from the practice of law. Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

"If the [Disciplinary] Board determines that a proceeding *** should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

The respondent was before the board pursuant to a five-count petition for disciplinary action alleging misconduct in his representation of five clients who had retained his services for the prosecution of personal-injury claims. In his answer to the petition, respondent admitted all of the facts charged and the rules violations alleged. He appeared before the board to

present evidence in mitigation only. The undisputed facts are as follows.

John Venditti (Venditti) retained respondent to represent him in a personal-injury claim arising from a motor vehicle accident. The respondent negotiated a settlement of the claim with the insurance carrier for the other party to the accident in the amount of $23,000 and received the settlement funds on March 25, 1995. He deposited the proceeds from that settlement into a business checking account in which he also maintained personal funds.

On March 30, 1995, he disbursed to his client the sum of $11,696.70 as his portion of the settlement proceeds after making deduction for respondent's fee and for payment of a $215 medical bill incurred by Venditti. Additionally, respondent withheld $2,550 to be held by him in escrow to pay a potential subrogation claim assertable by Venditti's own insurance carrier for medical payments made on his behalf. The respondent failed to pay the medical bill, maintain the escrow funds, or the funds for the payment of the medical bill in his account, and converted those funds to his own use.

The respondent continued to represent Venditti regarding a possible claim against his own insurance carrier based on the uninsured/underinsured provisions of his policy. In March of 1997 Venditti retained new counsel to pursue that claim, and requested that respondent transfer the file to his new counsel. The respondent did not comply with his client's directive, and Venditti filed a complaint against respondent with the Office of Disciplinary Counsel on February 10, 1998. The investigation of that complaint led to the discovery of the other incidents set forth in this opinion.

On February 25, 1998, after the disciplinary investigation had commenced and two years and eleven months after receipt of the settlement proceeds, respondent paid the outstanding medical bill and delivered the purportedly escrowed subrogation funds to Venditti.

On June 23, 1995, Michelle LeBrun was involved in a motor vehicle accident. She retained respondent to represent her in a claim for damages for personal injuries resulting from that collision. In June of 1996 respondent settled her claim with the insurance carrier for the other party to the accident, cashed the check and paid Le-Brun her proceeds in cash, less an amount for attorneys fees, costs, and outstanding medical bills. He paid one medical bill but did not pay LeBrun's outstanding debt to another health care provider until July 31, 1998, one year and eleven months after receipt of the settlement proceeds, and while he was under investigation by disciplinary counsel. The respondent did not maintain those funds in a separate account and had converted those funds to his own use.

The respondent also represented Anthony Faella in a claim for personal injuries incurred by him in a motor vehicle accident on November 27, 1995. On February 15, 1997, respondent received a settlement check in the amount of $25,000 on behalf of Faella, The respondent cashed the check. The respondent withheld from Faella's settlement $825 to pay a claim owed to Faella's accountant. He did not maintain those funds in a separate client's account and converted those funds to his own use. On March 6, 1998, after disciplinary counsel's investigation had begun, he paid the accountant.

Moira Vestri (Vestri) was involved in a motor vehicle accident on December 24, 1994, and she also retained the services of respondent. He negotiated a settlement of her case, and on August 30, 1996, respondent received a check in the amount of $9,000 on her behalf. He deposited the settlement proceeds into a business checking account. The respondent withheld funds from Vestri's portion of the settlement to pay the hospital bill and a separate bill owed to her physician for treatment of her injury. He did not pay those

bills on her behalf and converted the funds to his own use.

On November 6, 1998, two years and three months after receipt of the settlement proceeds, and while under investigation by disciplinary counsel, respondent paid the hospital bill. On December 18, 1998, respondent forwarded to Vestri the funds which had been purportedly set aside for payment of the doctor's bill.[1]

The final claim in this disciplinary proceeding arose from respondent's representation of Anne Olson, who was injured in an automobile accident on July 27, 1992. That case was settled by negotiation, and respondent received a settlement check which he deposited into his business account on January 5, 1993. From the settlement he withheld $3,206 for payment of medical bills owed by his client. Those funds were not paid by respondent until November and December of 1998, almost six years later. Those funds did not remain in a separate account in the interim, and had been converted to his own use.

At the hearing before the board, respondent offered the following evidence in mitigation. The respondent is a sole practitioner, and operated his law office out of his home, which he shared with his mother. He has a long history of alcohol and other substance abuse, which predates his admission to law school. In February of 1996 his mother passed away after a long illness. In February of 1997, he was involved in a serious motor vehicle accident, and he acknowledged that his alcohol abuse was a contributing factor to that accident.

After that accident, and prior to the filing of any disciplinary complaint leading to the instant proceedings, respondent voluntarily sought hospitalization for treatment of his alcohol and substance abuse. He successfully completed a residential detoxification program. He is presently active in rehabilitation groups including Alcoholic's Anonymous, mental health group

counseling, the Rhode Island Employee Assistance Program, and his church. He has fully and freely admitted his misconduct, and the board found his statements of remorse to be "sincere, heartfelt, and insightful."

The board rightfully concluded that the factors mitigating respondent's conduct do not excuse his failure to comply with the ethical standards promulgated by this Court. Accordingly, the board determined that respondent has violated Article V, Rules 1.15(a) & (b), 1.17(d), and 8.4(c), of the Supreme Court Rules of Professional Conduct. We agree.

■ Rule 1.15(a) requires an attorney to segregate funds of clients or third persons in a separate client account. In each of the above-noted transactions, respondent breached his fiduciary duties by commingling client funds and the funds properly belonging to third parties into a business account containing personal funds or by cashing settlement checks. He compounded this violation by converting the funds of third parties to his own use. Rule 1.15(b) requires the prompt delivery of funds in a lawyer's possession to those parties entitled to receive those funds. The undisputed facts reveal inordinate and inexcusable periods of delay on the part of respondent in delivering payment of these funds, payments prompted by a disciplinary investigation.

Rule 1.17(d) provides, in pertinent part:

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as *** surrendering papers and property to which the client is entitled ***."

■ The respondent violated this rule by his failure to forward the Venditti file or his "escrowed" funds for more than one year. Finally, the board determined that respondent's conversion of funds for personal use constituted a violation of Rule

1. Vestri had previously paid the doctor's bill from her own funds.

8.4(c) as well. That rule provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The wrongful conversion of funds entrusted to an attorney's care is conduct proscribed by this rule. *In the Matter of Hodge*, 676 A.2d 1362 (R.I.1996); *In the Matter of Krause*, 676 A.2d 1340 (R.I.1996).

It was the recommendation of the board that the respondent be suspended from the practice of law for one year, and that any reinstatement to the practice of law be subject to certain restrictions.

The respondent appeared before the Court and was represented by counsel. He was given an opportunity to present any matter in mitigation of his violations of the rules of professional conduct and to show cause why the recommendation of the board to impose sanctions should not be adopted by the Court.

Our review of the record supports the recommendation of the board. Accordingly, the respondent, John H. Brown, is suspended from the practice of law for one year, commencing forty-five days from the date of the filing of this opinion. In order to protect the interest of his current clients, the respondent shall file with the clerk of this Court either a list of all active clients or a statement by an attorney or attorneys who will assume responsibility to protect those clients' interests.

It is further ordered that, as a precondition to reinstatement to the practice of law, the respondent must maintain his sobriety by continuing monitored treatment, including random alcohol and substance abuse testing. He may only return to the practice of law if he associates with other attorneys who can provide structure and support for his practice, and submits to a mentoring program pursuant to which experienced attorneys will monitor his practice. The respondent will also be required to engage the services of a certified public accountant to audit his business and client accounts, and shall be required to submit the results of those audits to the Office of Disciplinary Counsel.