## In the Matter of Kyle ROCHA.

### No. 2013–360–M.P.

Supreme Court of Rhode Island.

Jan. 13, 2014.

David D. Curtin, Esq., Disciplinary Counsel

John Tarantino, Esquire.

### ORDER

This attorney disciplinary matter is before the Court pursuant to a decision and recommendation of the Supreme Court

Disciplinary Board (board) that the respondent, Kyle Rocha (respondent), be suspended from the practice of law. Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure provides in pertinent part:

> "If the Board determines that a proceeding * * * should be concluded by public censure, suspension or disbarment, it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

We directed the respondent to appear before this Court at its conference on November 14, 2013, to show cause, if any, why he should not be disciplined in accordance with the board's recommendation. The respondent appeared before this Court, with counsel. Having heard the representations of the respondent, his attorney, and this Court's Disciplinary Counsel, we determine that cause has not been shown, and we adopt the recommendation of the board that the respondent be suspended from the practice of law for a period of eighteen months with the effective date of the suspension being retroactive to September 25, 2012.

The following facts were determined by the board at a hearing held on August 7, 2013. We note that the respondent did not contest the facts as alleged by Disciplinary Counsel nor did he contest the allegations that he violated the Rules of Professional Conduct by his conduct described below.

The respondent was employed as an associate attorney by the law firm of Kirshenbaum and Kirshenbaum (firm) between September of 2010 and July 27, 2012. Pursuant to the terms of his employment relationship he was provided with an annual salary, and any fees he received from clients for legal representa-

tion were the property of the firm. On July 27, 2012, he voluntarily departed from his employment to seek new opportunities.

Subsequent to his departure it came to the attention of the firm that the respondent may have been representing clients without the knowledge of the firm, and may have received funds from clients that properly belonged to the firm but had not been deposited into firm accounts. Further inquiry revealed that the respondent had engaged in misconduct relating to four clients. The specific facts are as follows:

## CABRAL

While employed by the firm, the respondent received a total of $4,600 for the benefit of Wendy Cabral (Cabral). The funds consisted of $2,300 in cash, and a check in the amount of $2,300, which was payable to the respondent but the property of Ms. Cabral. The funds were delivered to the respondent by Cabral's former husband in settlement of their divorce.

The respondent did not deposit the funds into the firm's account. He hand-delivered the $2,300 in cash to Cabral, and then requested back from her $250 in cash to be applied toward his fee for preparing documents to divide a pension benefit of the former husband. The respondent advised Cabral that he would hold the $2,300 check in escrow, pursuant to an agreement he had reached with the former husband to withhold payment to Cabral until the former husband retrieved his personal property in Cabral's possession. Cabral had not assented to such an escrow arrangement, but she did not demand the funds from the respondent at that time.

The respondent did not retain the $2,300 check in escrow, as he had related to Cabral. He also did not deliver the funds to the firm. Rather, by his own admission,

he cashed the check and converted the funds to his own use.

### FELICIO

The respondent represented Brenda Felicio (Felicio), in a domestic relations matter while employed by the firm. Felicio paid an initial retainer to the firm, but as of August 3, 2011 she had an outstanding unpaid balance of $3,060 in fees owed to the firm. Without the knowledge or consent of the firm the respondent agreed to compromise the balance due, and accept $1,500 as final payment of her fee. On October 3, 2011, the respondent received a check in the amount of $5,000 from Felicio's husband, made payable to the respondent and Felicio. He arranged to meet Felicio at a bank, they both endorsed the check, and the respondent received $750 from Felicio in partial payment of the fee owed to the firm. The respondent did not deliver the funds to the firm and converted those funds to his own use.

On May 14, 2012, the respondent received an additional check in the amount of $5,000 from Felicio's husband. Felicio agreed to pay the respondent $750 from that check in final payment of her outstanding fee, with the remainder of the funds to be delivered to Felicio. He obtained her endorsement on the check, but again did not deposit the check into the firm account. Felicio made several demands upon the respondent to receive her funds, but he did not comply until late June of 2012 when he came to her house at midnight and hand-delivered to her $5,000 in cash. At that time Felicio tendered $750, in cash, to the respondent, in final payment of her outstanding bill. The respondent did not deliver those funds to the firm, and converted them to his own use.

Additionally, the respondent requested and received from Felicio a payment of $2,300, in cash, to be used as a retainer for legal services on another issue. Subsequent events made that issue moot, the respondent's services were no longer required, and Felicio was entitled to return of that unearned retainer. The respondent failed to promptly return those funds.

### LAMOUREAUX

On June 8, 2012, Susan Lamoureaux (Lamoureaux), had an initial consultation with the respondent at the firm. She used her credit card to pay the fee assessed for that meeting, and that payment was properly credited to the firm account. Lamoureaux did not hire the firm to represent her at that time. On June 19, 2012, Lamoureaux met again with the respondent, agreed to retain the firm for representation, and paid a requested $2,500 retainer fee to the respondent. He did not deposit the retainer into the firm account or inform the firm Lamoureaux had retained his services. He converted the retainer fee to his own use.

The respondent did not prepare the documents necessary for Lamoureaux's legal representation or maintain adequate communication with her. On August 20, 2012 she contacted the firm to express her displeasure with the manner in which her legal issues were being addressed. The respondent had departed from the firm by that date, and this contact was the first notice the firm had received that Lamoureaux was a client. The firm agreed to honor the representation agreement even though the respondent had not delivered the fees as required by his employment agreement.

### BERNARD

In April of 2012, while employed at the firm, the respondent received a $7,500 retainer from Douglas Bernard (Bernard) to provide legal services. He did not inform the firm that he had been retained by

Bernard, and he did not deposit the retainer into the firm account. Instead he converted those funds to his own use. He did, however, provide legal services to Bernard.

After becoming aware of the respondent's conduct regarding these four clients, the firm filed a complaint with Disciplinary Counsel on August 10, 2012. On August 30, 2012 the respondent delivered to the firm full restitution for the funds he had misappropriated relating to Cabral, Felicio and Lamoureaux. He voluntarily disclosed he had received $1,500 for representation of another client the firm was not aware of and made restitution for that client as well.

On September 25, 2012 the respondent voluntarily placed himself on inactive status, rendering himself unable to practice law. He remains on inactive status to this date.

At the disciplinary hearing the respondent presented the following mitigation evidence. He is a young attorney, being admitted to the Rhode Island Bar in 2009. Prior to being hired by the firm he began taking prescription medication to cope with the pain relating to an injury he had sustained. Unfortunately, what began as controlled maintenance of his condition devolved into an uncontrolled addiction to drugs. The respondent began purchasing narcotics from illegal sources, and his need for drugs consumed both his income and his judgment. He began misappropriating funds from the firm to fund his drug purchases.

As a result of the filing of the complaint, the respondent took immediate steps to address both his misconduct and his drug issues. Full restitution was made to the firm, and he voluntarily ceased practicing law and engaged in other employment. He fully cooperated with Disciplinary Counsel's investigation into his conduct, and he voluntarily disclosed an additional instance of malfeasance that neither the firm nor Disciplinary Counsel was aware of. He has obtained both in-patient and out-patient treatment for his addiction, and remains in treatment. His treating physician provides periodic reports to Disciplinary Counsel, and those reports reveal he is making excellent progress in his recovery. He has voluntarily submitted to random drug-screening tests, and all of those tests reveal that he remains drug free.

After review of the admitted facts, and taking into consideration the mitigating evidence, the board concluded that respondent had violated Article V, Rules 1.3,[1] 1.4,[2] 1.15,[3] and 8.4(c)[4] of the Supreme Court Rules of Professional Conduct. We agree. The respondent failed to safeguard the fees paid by the clients by not depositing them into the firm's client account and converting those funds to his own use. Those funds properly belonged to the

---

1. Article V, Rule 1.3 of the Supreme Court Rules of Professional Conduct entitled "Diligence," provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

2. Rule 1.4 entitled "Communication," provides in pertinent part: "(a) A lawyer shall: * * * (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information * * *[.]"

3. Rule 1.15, entitled "Safekeeping property," provides in relevant part: "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

4. Rule 8.4(c), entitled "Misconduct," provides in relevant part: "It is professional misconduct for a lawyer to * * * (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation * * *[.]"

clients until earned, and then to the firm. He failed to adequately communicate with his clients as to the legal matters entrusted to his care, and was less than diligent in providing legal services to them.

We have previously held that a respondent's drug addiction may help to explain, but does not excuse, his misconduct. *In re Brown*, 735 A.2d 774, 776 (R.I.1999). We see no reason to reach a different result here. In similar cases where an attorney's commingling and conversion of funds has been linked to alcohol abuse or other addictions, and the attorney has repaid the funds prior to the disciplinary hearing, we have suspended the attorney from the practice of law. *In re Hellew*, 828 A.2d 531, 533 (R.I.2003) (mem.); *In re Brown*, 735 A.2d at 776–77. We find that the board's recommendation in this matter is well supported by prior decisions of this Court.

Accordingly, we adopt the recommendation of the board that the respondent be suspended from the practice of law for eighteen months, with the effective date of this order of suspension retroactive to September 25, 2012. At the conclusion of this eighteen-month period of suspension, the respondent may apply to this Court for reinstatement pursuant to Article III, Rule 16 of the Supreme Court Rules of Disciplinary Procedure.

Justice ROBINSON did not participate.