**Supreme Court**
No. 2014-308-M.P.

**In the Matter of William F. Holt.**

**AMENDED ORDER**

This disciplinary matter comes before us pursuant to Article III, Rule 6(d) of the Supreme Court Rules of Disciplinary Procedure. On September 16, 2014, the Disciplinary Board (board) of the Supreme Court forwarded for our review its decision that the respondent, William F. Holt (respondent), had violated the Supreme Court Rules of Professional Conduct, along with a recommendation that we suspend the respondent from the practice of law for three years as a sanction for his misconduct. We directed the respondent to appear before this Court at its conference on October 8, 2014, to show cause why he should not be disciplined. The respondent appeared with counsel. Having heard the representations of the respondent, his attorney, and Disciplinary Counsel, we determine that cause has not been shown, and we accept the board's recommendation.

This proceeding resulted from several complaints filed with the board alleging the respondent had committed misconduct in his representation of four separate clients who had matters pending in the Family Court. As a result of those complaints, formal charges against the respondent were filed with the board. A hearing on the allegations set forth in the charges was scheduled to be heard on May 30, 2014. Prior to that date, Disciplinary Counsel (counsel) and the respondent entered into an agreed statement of facts whereby the respondent agreed he had violated various rules of professional conduct in each of those four separate matters. That agreed statement of facts was submitted to the board members at the hearing, and those facts form the

basis of the board's recommendation. We summarize those facts in the manner presented to us by the board.

## AUCLAIR

On July 3, 2012, Lynn Auclair (Lynn) obtained a restraining order from the Family Court whereby Brian Auclair (Brian) was restrained from having any contact with her, and Lynn was granted the exclusive use and possession of the marital domicile. By its terms this restraining order was to remain in effect until July 3, 2014. At the time this order was entered, neither Lynn nor Brian was represented by an attorney.

On May 30, 2013, Brian retained the respondent to represent him. Lynn obtained her own attorney shortly thereafter. On June 6, 2013, relying on information provided to him by his client, the respondent appeared before a magistrate judge in the Family Court ex parte and presented a proposed order for entry by the court. The order presented by the respondent authorized Brian to enter the marital domicile and remove any items he chose from the premises. The proposed order purported to be by the agreement of both Brian and Lynn. Relying on the respondent's representations, the magistrate signed the order.

However, Lynn had not agreed to the proposed order, and she was not aware that it was being presented. The respondent did not file a motion to modify the restraining order, provide any notice to Lynn or her attorney that he was appearing before the court, nor notify Lynn or her attorney that he had obtained an order modifying the restraining order. Lynn only became aware that the restraining order had been modified when she discovered that Brian was removing items from the marital domicile. On June 12, 2013, Lynn's attorney filed a motion to vacate the order obtained by the respondent, and the respondent agreed to vacate the order.

The parties to the disciplinary hearing stipulated that the conduct of the respondent in this matter was in violation of Article V, Rules 3.3(a) and (d), 3.5(b), and 8.4(c), of the Supreme Court Rules of Professional Conduct.[1]  We agree.  The respondent willfully failed to follow proper procedure to obtain modification of an existing court order, did not notify the opposing party that he was seeking to do so, and he presented a proposed order to the magistrate judge that falsely claimed to have been agreed upon by the parties.  It is of no moment that the respondent relied on information provided to him by his own client in doing so.  Had he followed proper procedure and filed a motion with notice, Lynn would have been provided the opportunity to be heard.  By circumventing the ordinary process, the respondent misled the court and gained an unfair advantage for his client.

## BONOLLO

Michelle Bonollo (Michelle) retained Attorney Lois Iannone (Iannone) to represent her in obtaining a divorce, and her husband, Dennis Bonollo (Dennis), retained the respondent. Iannone and the respondent agreed that the respondent would accept service of the divorce

---

[1] Article V, Rule 3.3 of the Supreme Court Rules of Professional Conduct entitled "Candor toward the tribunal," provides in pertinent parts:

"(a) A lawyer shall not knowingly:  (1) make a false statement of fact or law to a tribunal * * *.

"* * *

"(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."

Rule 3.5, entitled "Impartiality and decorum of the tribunal," provides in relevant part:  "A lawyer shall not:

"* * *

"(b) communicate ex parte with such a person [judge, juror, prospective juror or other official] during the proceeding unless authorized to do so by law or court order * * *."

Rule 8.4, entitled "Misconduct," provides in relevant part:  "It is professional misconduct for a lawyer to:

" * * *

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation * * *."

complaint and related documents on behalf of Dennis once the divorce case was filed. Iannone prepared the necessary pleadings and filings on behalf of her client to commence the divorce action and presented them to the Family Court Clerk for filing on June 28, 2013. The then-standard practice for the clerk to follow upon receipt of such a filing was to process the paperwork, and when the documents are ready for service, leave the processed paperwork in a common area at the courthouse to be retrieved by the attorney who filed the divorce action. The filing attorney would then effectuate service of process upon the other party.

When a complaint for divorce is filed with the Family Court, there are automatic court orders that immediately come into effect to assist in maintaining the status quo between the divorcing parties until further action by the court. These orders are set forth in a standardized form and become effective upon the plaintiff once a complaint for divorce is filed and upon the defendant upon service of the summons, complaint, and order. The automatic orders include a provision that states:

> "Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or without an order of the court, any property, individually or jointly held by parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorneys' fees in connection with this action."

Upon Iannone's filing of the divorce complaint and related documents, the clerk processed the paperwork and placed the necessary documents, including the divorce complaint and a copy of the automatic orders, in the common area for retrieval by Iannone. However, it was the respondent, not Iannone, who wrongfully retrieved those documents from the common area without the knowledge or consent of Iannone. Moreover, he failed to disclose to Iannone that he had done so. However, he did inform his client of the existence of the automatic orders.

Unaware that the respondent had taken possession of the divorce papers, Iannone made numerous attempts to obtain the documents from the clerk so she could effectuate service. Needless to say, these attempts were unsuccessful as the papers were in the respondent's possession. On July 8, 2013, Michelle contacted Iannone and alleged that Dennis had assaulted her on July 6, 2013, and that on July 6 and 7, 2013, he had removed numerous items from the marital domicile. On July 8, 2013, Iannone accompanied her client to the Family Court and assisted her in filing and obtaining a restraining order against Dennis. When presenting a copy of the restraining order to the clerk's office, Iannone again inquired as to the status of the divorce complaint she had filed on June 28, 2013. At that time, the respondent approached Iannone and informed her that he had taken the papers from the common area.

In the agreed statement presented at the disciplinary hearing, the respondent acknowledged that, by his wrongful retrieval of the divorce documents, including the automatic orders, he had provided an advantage to his client, requiring further judicial proceedings to effectuate an equitable distribution of the marital assets. The respondent further acknowledged that his conduct in this matter was in violation of Rule 8.4(d)[2] of the Rules of Professional Conduct. By wrongfully taking the divorce papers and failing to disclose to Iannone he had done so, he interfered with Iannone's ability to obtain proper service and protect the rights of her client. He also obtained an unfair advantage for his client, as Michelle was subject to the automatic orders and Dennis was not, a situation of which Dennis took advantage. There is no question that the respondent's conduct interfered with the proper administration of justice in this matter.

---

[2] Rule 8.4(d) provides: "It is professional misconduct for a lawyer to: * * * engage in conduct that is prejudicial to the administration of justice * * *."

**PALLINI**

The events in this third matter occurred over an extended period of time, but the misconduct is of recent vintage. Melissa Pallini (Melissa) and Anthony Pallini (Anthony) became divorced on August 2, 2001. The respondent represented Melissa, and Anthony was represented by Attorney Brenda Rioles. The final judgment for divorce entered in the case contained a provision relating to the division of Anthony's pension. In order to effectuate the terms of the division of that pension, it was necessary to prepare a Qualified Domestic Relations Order (QDRO), to be entered by the Family Court. However, the parties disagreed as to the terms of the QDRO, and the court was not presented with a QDRO prior to entry of the final judgment of divorce. A motion to enter the QDRO was heard in October 2002, but the parties passed it off the calendar. There was no further action to prepare and enter a QDRO until 2012 when Melissa learned that her former husband had retired. At that time, she sought the respondent's assistance in obtaining the pension benefits which she believed she had been awarded ten years earlier.

Once again, the respondent chose to pursue an improper course of action to procure his client's pension benefits. He prepared a QDRO that was materially different from the terms contained in the final divorce decree and awarded his client more substantial rights in Anthony's pension than the court had awarded. The respondent made no attempt to contact Anthony or his counsel to attempt to reach an agreement as to the terms of the QDRO, and he did not notify either of them that he would be submitting the QDRO in court. He did not file a motion with the court or request a hearing on the terms of the QDRO. Rather, the respondent had an ex parte meeting with a judge of the Family Court and presented the QDRO for her signature. The respondent did not inform the judge that the QDRO varied from the provision of the final

judgment relating to the division of the pension benefits, or inform the judge that neither Anthony nor his counsel was aware the QDRO was being presented to the court.

The judge signed the order based upon respondent's representations, and the QDRO became an order of the Family Court. The respondent forwarded a copy of the QDRO to Anthony's former employer, who in turn amended Anthony's pension distribution. Anthony became aware of the existence of this QDRO when his pension benefits changed, and he initiated proceedings in both the Superior and Family Courts to restore the pension benefits he had been receiving and to vacate the QDRO obtained by the respondent. On July 18, 2013, a justice of the Family Court entered an order vacating the QDRO and also found that the respondent had acted in bad faith and had committed a fraud upon the court. The respondent filed an appeal from that ruling without the informed consent of Melissa, but he later voluntarily withdrew that appeal.

The parties to the disciplinary action agreed that respondent's conduct in this matter was in violation of Article V, Rules 1.3[3], 3.2[4], 3.3(d), 3.5(b), and 8.4(d) of the Supreme Court Rules of Professional Conduct. It is undisputed that respondent neglected to protect Melissa's rights to the pension benefits awarded to her in the final decree of divorce. Shortly after the final decree was entered, it was clear that a QDRO was necessary to protect those rights, and further court action was necessary to clarify the terms of that QDRO. However, the respondent did nothing for almost ten years and then only took action when prodded to do so by his client.

When he did decide to act, he acted inappropriately. He should have prepared a draft QDRO, presented it to Anthony and his counsel, and filed a motion, with proper notice, in the

---

[3] Article V, Rule 1.3 of the Supreme Court Rules of Professional Conduct entitled "Diligence" provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] Article V, Rule 3.2 of the Supreme Court Rules of Professional Conduct entitled "Expediting litigation," provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

Family Court, allowing both parties the opportunity to be heard. Instead he drafted a QDRO that was not reflective of the final judgment, failed to provide any notice to Anthony or his counsel, met on an ex parte basis with a judge of the Family Court, and failed to disclose all of the necessary facts in order for that judge to make an informed decision as to whether to sign the QDRO. His actions violated all of the rules charged, as acknowledged by the respondent.

**READ**

The final entry in this quadruplet of complaints was submitted by the attorney for Gregory Golembowski (Gregory). Gregory filed for divorce from his wife, Jessyca. Gregory was represented by Attorney Arthur Read (Read), and Jessyca was represented by the respondent. A principal issue in the divorce involved the custody of and visitation with the couple's three minor children.

On behalf of Jessyca the respondent filed a motion for temporary orders, including a request that she be allowed to relocate to Florida. On June 11, 2013, the parties appeared in the Family Court and agreed to the issuance of temporary orders to remain in effect until a full hearing could be held on the issues. The hearing judge specifically ruled that Jessyca could "stay" in Florida with the children and her parents, pending a full hearing, and continued the matter to July 25, 2013.

The respondent prepared a draft order purportedly setting forth the court's ruling on June 11, 2013, and he forwarded a copy to Read. However, that draft order provided Jessyca could "relocate" to Florida with the three minor children. This proposed order may be what Jessyca desired, but it was not what the court had ruled. Read promptly filed an objection to the proposed order and assigned the objection for hearing on July 25, 2013. The proposed order

prepared by the respondent was signed by a justice of the Family Court on July 15, 2013 but was not in the court file when the matter was scheduled to be heard on July 25, 2013. The matter was further continued to September 26, 2013, at which time the Family Court judge made a finding of fact that the order prepared by the respondent was a misrepresentation of what the court had ordered on June 11, 2013, and struck the order entered on July 15, 2013, from the record. The parties to the disciplinary hearing agreed that the respondent's conduct in preparing an order that significantly misrepresented the judge's decision and then required the filing of motions and an additional hearing to have the improper order struck was in violation of Rules 3.3(a) and 8.4(d).

After considering the respondent's admitted conduct in these four matters, the full disciplinary board has recommended that we suspend the respondent from the practice of law for three years. We accept the findings of fact and rule violations as stipulated to by the respondent and adopted by the board. When fashioning an appropriate sanction to impose upon an attorney for misconduct, we weigh both mitigating and aggravating factors to determine the proper level of discipline to impose. In re Fishbein, 701 A.2d 1018, 1020 (R.I. 1997). When we consider those factors in this matter, the balance leans heavily toward imposing substantial discipline.

In mitigation, we note that the respondent has been a member of the bar since 1987, and he has received no prior discipline. He readily admitted to the facts in each of these matters, acknowledged his misconduct, and accepted that his actions were in violation of the rules. He appeared before the board and this Court and expressed his remorse. However, we note that the respondent did not provide any satisfactory explanation for his misconduct. Many of the attorneys who appear before us in disciplinary proceedings suffer from underlying personal or substance abuse issues that affect their judgment. See, e.g., In re Rocha, 86 A.3d 383, 387 (R.I. 2014) (mem.); In re Hellew, 828 A.2d 531, 533 (R.I. 2003) (mem.); In re Brown, 735 A.2d 774,

776 (R.I. 1999). In each of those matters we noted an impairment that helped explain, but did not excuse, their misconduct. We do not find any sufficient mitigating factors in this case.

We do find many aggravating factors. The respondent committed multiple acts of misconduct in four separate cases. There is a persistent pattern of deceiving judges before whom the respondent appeared, doing so without the knowledge of or notice to opposing parties and their attorneys, and obtaining orders to benefit his clients which they were not entitled to receive. The respondent did not just prejudice the administration of justice, he sabotaged it. By all accounts the respondent is an experienced member of the bar and a zealous advocate for his clients. However, in this matter we find that his substantial experience is an aggravating rather than a mitigating factor. The respondent is well-aware of the proper procedures to follow to represent the interests of his clients without violating the rules. He chose a course of action to win at all costs, and he repeatedly disregarded the procedural and ethical rules designed to provide fair hearings in our courts.

We are mindful that the purposes of professional discipline are to protect the public and maintain the integrity of the profession. In re McBurney, 13 A.3d 654, 655 (R.I. 2011). We believe that the sanction recommended by the board fulfills those purposes in this matter.

Accordingly, the respondent, William F. Holt, is hereby suspended from the practice of law for three years, with the effective date being May 1, 2014, the date he was placed on inactive status per his request.

Entered as an Order of this Court this *24ᵗʰ* day of *November 2014.*

By Order,

_____/s/_____
Clerk

- 10 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          In the Matter of William F. Holt.

**CASE NO:**          No. 2014-308-M.P.

**COURT:**          Supreme Court

**DATE ORDER FILED:**          November 24, 2014

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          N/A – Court Order

**JUDGE FROM LOWER COURT**:

                  N/A – Court Order

**ATTORNEYS ON APPEAL:**

                  For Petitioner:     David D. Curtin
                                      Chief Disciplinary Counsel

                  For Respondent:   John A. Tarantino, Esq.
                                       Patricia K. Rocha, Esq.