# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-7028

ROBERT V. CHISHOLM, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 13, 2025                    Decided March 13, 2025)

*Jenna E. Zelmer* of Providence, Rhode Island, for the appellant.

*Clifton A. Prince.* with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Amanda M. Radke*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before TOTH, FALVEY, and LAURER, *Judges*.

FALVEY, *Judge, filed the opinion of the Court. TOTH, Judge, filed a concurring opinion.*

FALVEY, *Judge*: Robert V. Chisholm represented Army veteran Anthony Sutton. With the help of his own counsel, Mr. Chisholm appeals a November 15, 2022, Board of Veterans' Appeals decision that denied him payment of fees based on past-due benefits VA awarded to the veteran in April 2022. His appeal is timely and within our limited statutory jurisdiction.

We are asked to decide whether the Board clearly erred when it concluded that the April 2022 rating decision that awarded higher ratings for tinea pedis and right lower extremity radiculopathy was the initial decision on the case. This matter was referred to a panel of this Court, with oral argument, to help clarify whether an application for a rating of total disability based on individual unemployability (TDIU) can serve as a supplemental claim and be part of the same case as VA's earlier denial of certain increased rating claims. We agree with Mr. Chisholm that it can.

We thus hold that while a supplemental claim needs to be filed on a form prescribed by the Secretary, it doesn't need to be filed on a supplemental claim form. And because the veteran is seeking higher ratings for his service-connected disabilities by applying for TDIU, that application can serve as a supplemental claim when filed after VA denies higher ratings for those disabilities. After all, the veteran is seeking the same or similar benefit—higher ratings for his disabilities.

Before turning to the merits, we must decide whether there is still a live case or controversy. The Secretary says that he sent a check to Mr. Chisholm that compensates him for the work helping the veteran, thereby resolving the controversy. Yet the Secretary admits that the decision supporting this payment is all sorts of wrong. It references the wrong disabilities—it doesn't even suggest that VA is paying for work done on the tinea pedis or radiculopathy claims. And instead, it awards fees for ineligible work. Two or more wrongs don't make a right, and they certainly don't moot the controversy here. The Secretary's misguided payment does not provide the same relief as a final Court decision confirming Mr. Chisholm's correct award. Thus, we will deny the Secretary's motion to dismiss and decide the merits of this appeal.

## I. BACKGROUND

The facts relevant to our decision are few and mostly uncontested. The veteran has been service connected for certain disabilities for decades. In November 2019, he asked VA for higher ratings for some of these disabilities, including tinea pedis and right lower extremity radiculopathy. Record (R.) at 3902-06. VA denied his claim in February 2020. R. at 2897-906. Within a year of that rating decision, the veteran, now represented by Mr. Chisholm, requested higher level review (HLR) of the February decision. R. at 2836-42. VA did not budge and continued the same ratings in an April 2021 HLR decision. R. at 2799-814.

This led the veteran on a different path to higher compensation. The nature of that path is at issue here. Within a year of the HLR decision, the veteran submitted more evidence and requested that VA rate him as totally disabled. R. at 2705. To shore up this request, the veteran included a statement describing how his radiculopathy and tinea pedis negatively impacted his ability to work. R. at 2709-11. In response to this submission, VA awarded the veteran higher ratings for radiculopathy and tinea pedis in an April 2022 rating decision.

But when it came to paying Mr. Chisholm for his work, VA denied entitlement to direct payment of attorney fees in a May 19, 2022, decision. R. at 1149. Mr. Chisholm appealed to the Board, resulting in the decision on appeal.

In that decision, the Board concluded that Mr. Chisholm was not entitled to fees because the veteran's 2019 claim stream for higher ratings perished when he did not pursue appellate review of the April 2021 HLR decision. R. at 7-8. This led the Board to reason that the TDIU request was

2

a new claim, which would make the April 2022 rating decision an initial decision and prevent Mr. Chisholm from charging fees. *Id*.

While all of this was happening, VA issued several other fee decisions. First, a May 2022 decision finding no past-due benefits resulting from an award of service connection for left knee limitation of motion and left lower extremity radiculopathy. R. at 1145-47.[1] Next, a July 2022 decision finding eligibility for attorney fees based on past-due benefits resulting from the service-connected left knee limitation of motion and left lower extremity radiculopathy. R. at 950-52. And finally, a March 2023 decision finding eligibility for attorney fees based on past due benefits resulting from the April 2022 award of service connection for left knee limitation of motion and left lower extremity radiculopathy. Secretary's Attachment to Motion to Dismiss at 12.

Mr. Chisholm helped the veteran get higher ratings for tinea pedis and right lower extremity radiculopathy. VA denied him payment for work performed on those two claims. Still, the Secretary insists that there is no longer a live dispute between the parties because VA paid Mr. Chisholm for his work on other claims and asks us to dismiss this appeal. We turn to this issue first.

## II. ANALYSIS

### A. The Parties' Mootness Arguments.

Our decision to adopt the Article III case and controversy requirement means that we need to ensure that there is still a live dispute that we can remedy. *See Kernz v. McDonough*, 36 Vet.App. 372, 381 (2023) (en banc). Like other federal courts, we don't decide hypothetical disputes; we need a real controversy between the parties that we can remedy. *Id*. When checking whether a dispute is moot, we must remember that mootness is a demanding standard. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019). We may only find a case moot when it is impossible for us to provide any effective relief. *Id*.

The Secretary asks us to combine all of VA's decisions and the resulting payment to find that VA has paid Mr. Chisholm all the money he is owed and that his case is therefore moot. If Mr. Chisholm has all his money, there is nothing left for us to do.

---

[1] These documents are not part of the record of proceedings, but they are part of the record before the agency and were included as attachments in the parties' supplemental filings. Because they have an R. cite, we use that instead of the more cumbersome option of citing to the filing, attachment, and then pin cite.

3

In response, Mr. Chisholm points out that this appeal is about whether he should be paid for work performed on the tinea pedis and right lower extremity radiculopathy increased rating claims in particular; the other VA decisions don't grant him payment based on those claims. Mr. Chisholm agrees with the Secretary that the decisions offering him payment contain errors and that he is not entitled to that money. Thus, he has kept the money in his trust account because it properly belongs to his client. We think Mr. Chisholm has the better argument.

At bottom, VA never said that Mr. Chisholm is entitled to be paid for his work on the tinea pedis and right lower extremity radiculopathy rating claims. And the Secretary hasn't said that here either. In briefing and at oral argument, the Secretary vigorously maintains that Mr. Chisholm cannot be paid for the work done before the April 2022 decision. It's safe to say there is still a dispute about that payment, even if coincidentally the amount in dispute ($239.09) is the same.

What's more, VA's decisions purporting to pay Mr. Chisholm are wrong—most of the Secretary's motion to dismiss offers corrections that explain what the decisions *should* say, not what they actually say. And none of the decisions support withholding money from the veteran and paying it to Mr. Chisholm instead.

To recap: VA gave Mr. Chisholm his client's money based on decisions we all agree do not entitle him to that money. And VA now tells him to keep that money while still insisting that he's not entitled to it. Unsuprisignly, Mr. Chisholm doesn't want to do that.

We don't blame him. Morality aside, Rhode Island, where Mr. Chisolm is licensed to practice law, prohibits attorneys from retaining funds that don't belong to them. *In re Rocha*, 86 A.3d 383, 387 (R.I. 2014). No reasonable attorney would consider themselves paid in such circumstances. We can resolve whether Mr. Chisholm is legally entitled to be paid fees based on the April 2022 award of higher ratings for radiculopathy and tinea pedis. The parties are at odds over this, and VA has not issued a decision awarding Mr. Chisholm such fees. Our decision would therefore provide meaningful relief to Mr. Chisholm by cementing his legal entitlement to fees for advocacy related to tinea pedis and right lower extremity radiculopathy rating claims. Having resolved this jurisdictional issue, we turn to the parties' merits arguments.

### B. The Parties' Merits Arguments

To convince us that VA's award of higher ratings was not the initial decision in the case, Mr. Chisolm offers two arguments. First, he says that the 2019 increased rating claim remained pending because the appeal period had not run out. To bolster this point, he reminds us that, in the

4

legacy system, a claim does not become final if VA receives new evidence within the one-year period for appeal. *See, e.g.*, *Jennings v. Mansfield*, 509 F.3d 1362, 1368 (Fed. Cir. 2007).[2] And because the veteran submitted documents before his deadline to appeal, Mr. Chisholm reasons the radiculopathy and tinea pedis claims remained pending when VA granted the higher ratings in April 2022.

Second, he says that when his client submitted a VA Form 21-8940 (Veteran's Application for Increased Compensation Based on Unemployability) he was filing a supplemental claim pursuing his tinea pedis and radiculopathy claims. This continuous pursuit linked the April 2022 decision to the 2019 claim, thus making Mr. Chisholm eligible for fees.

Not so, says the Secretary. In response to Mr. Chisolm's dual-path approach, he offers a unified theory and invites us to reject both arguments. As the Secretary sees it, Congress gave claimants three options following VA's initial decision in a case—HLR, a supplemental claim, or a Board appeal. *See Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1119 (Fed. Cir. 2021). A TDIU application is not one of those paths. He then points to our decision in *Jackson (Alexandra) v. McDonough*, 37 Vet.App. 277 (2024), to argue that the veteran's earlier increased rating claim is a separate case from his subsequent TDIU claim. And so, the Secretary reasons that, without a supplemental claim and with a request for different benefits, the April 2022 decision was the initial decision in that case.

We will first review when attorneys can charge fees. As we explain, that determination turns on whether VA made an earlier decision in that case. We will then explore whether the TDIU application could have helped link the April 2022 decision to the November 2019 claim and the subsequent February 2020 VA decision. Doing so will help us figure out if they're the same case. As part of that inquiry, we will have to decide whether a TDIU application could ever serve as a supplemental claim that continued the veteran's claim.

### C. When Can Attorneys Charge Fees?

Historically, the VA claims system safeguarded veterans' benefits by limiting when attorneys can charge fees. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 307-08 (1985). That paternalism has somewhat lessened and today's attorneys may charge a fee after the

---

[2] Mr. Chisolm's choice to rely on *Jennings* strikes us as odd. That decision turned on the application of 38 C.F.R. § 3.156, which does not apply here. That said, we think that 38 C.F.R. § 3.160(d)(2) does substantially the same work to ensure that a decision is not final until the time to appeal has run.

claimant receives notice of VA's "initial decision . . . with respect to the case." 38 U.S.C. § 5904(c)(1); *see also Mil.-Veterans Advoc.*, 7 F.4th at 1136. The present setup reflects an intuitive idea: Congress doesn't want veterans to pay fees before VA denies them a benefit. But once VA denies a claim, attorneys can be compensated for helping veterans get the benefits they deserve.

To this end, the Federal Circuit takes "a broad view of the term ["case"], stating that 'a case within the meaning of Section 5904(c) encompasses all potential claims *raised by the evidence*, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled . . .'" *Perciavalle v. McDonough*, 101 F.4th 829, 836 (Fed. Cir. 2024) (second alteration in original) (*quoting Jackson (Francis) v. Shinseki*, 587 F.3d 1106, 1109 (Fed. Cir. 2009)).

No matter how broad, the same case can't be stretched to encompass upstream issues. And so, we've held that a veteran's request for service connection is not within the same case as a later request for a higher rating. *Jackson (Alexandra)*, 37 Vet.App. at 295. The Secretary relies on this decision to argue that Mr. Chisholm is not entitled to fees. But we fail to see the relevance of this holding.

To be sure, this Court's decision in *Jackson* teaches us a lot about what constitutes the same case. There, we invoked the Federal Circuit's decision in *Perciavalle* to make the point that a service-connection "claim may morph and expand as an appeal, to include TDIU" and be eligible for fees when it is "continuously pursued and never final." *Id*. at 284-85 (citing *Perciavalle*, 101 F.4th at 836).[3] And we reviewed the two paths for a supplemental claim, explaining supplemental claims can either "reengage VA to address a benefit once denied, [or] . . . continuously pursue an initial claim." *Id*. at 286. But "[i]n either scenario, the claimant filing the supplemental claim must have 'previously filed a claim for the same or similar benefits on the same or similar basis.'" *Id*. (quoting 38 U.S.C. § 101(36)). That is, after all, the statutory definition of a supplemental claim.

This function of a supplemental claim, unlike an original claim, is what made the difference in *Jackson*. Our decision turned on the fact that the veteran's request for higher ratings after an initial grant of service connection is not a request for similar benefits on the same or similar basis. *Id*. at 290-91. The focus of what is at stake and what needs to be proven shifts from when VA

---

[3] This makes sense particularly because TDIU is not a standalone claim but is simply an attempt to get the appropriate rating for a disability. If TDIU comes up as part of the service-connection claim, then TDIU is part of that case when VA is rating the veteran.

grants benefits and when the veteran now tries to obtain a higher rating. For all its value, we don't think *Jackson* is dispositive to our decision here.

In fact, this Court in *Jackson* made the specific point that its holding "doesn't affect payment of fees when VA denies an increased rating claim but then grants a supplemental claim for an increased rating through continuous pursuit." *Id*. at 295. In other words, this Court did not "speak to fees for advocates who aid a claimant with their continuous pursuit of a claim or a rating assigned from a supplemental claim." *Id.* Instead, we recognized that with a supplemental claim following VA's denial of increased ratings, "the supplemental claim speaks to the already denied claim, so past-due fees would be appropriate." *Id.*

### D. TDIU Is a Request for Higher Ratings.

Mr. Chisholm wants to invoke this discussion from *Jackson* to get paid. To understand why, we must recognize the significance of a veteran's TDIU request and how it fits into the supplemental claim process. "TDIU is not a separate claim. It is one way to get the appropriate rating for a disability." *Phillips v. McDonough*, 37 Vet.App. 394, 401 (2024). It is another option "that gets the veteran up to that 100% rating. And it is a way for 'all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities [to] be *rated* totally disabled.'" *Id.* at 400 (alteration in original) (*quoting* and adding emphasis to 38 C.F.R. § 4.16(b)). And so, "when a veteran already has service connection for a disability and applies for a higher rating, then VA needs to consider TDIU when it receives evidence of unemployability." *Id*. at 401.

The reverse of that is also true. If a veteran is service connected and applies for TDIU—i.e., requests a higher rating—VA needs to consider the veteran's disabilities and see whether the veteran or the record raises the prospect of higher ratings for the veteran's service-connected disabilities. *Id*. at 401. At bottom, "TDIU is a potential rating for the veteran's disability." *Id*. at 402. And no matter how a claim is labeled, VA must consider all claims raised by the evidence. *Id*. at 400 (citing *Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009)). This means that when a veteran requests a higher rating based on his or her employment problems, VA needs to consider the impact of all the service-connected disabilities and see whether they prevent substantially gainful employment. *Id*. at 401. During that process, if VA sees that the veteran's schedular rating for those disabilities may need to be increased, it needs to address that. *Id*. "Like other potential

ratings, TDIU is just a mechanism to maximize benefits and rate the veteran correctly." *Id*. at 401. That rating may be schedular, extraschedular, or through TDIU.

Consider the veteran in *Phillips*. Like Mr. Chisholm's client, Mr. Phillips applied for TDIU. And when he did that, "VA found that this application raised the possibility of an increased schedular rating for PTSD. Mr. Phillips's skin rating was already pending before VA. In response to the application, VA then decided the rating for his PTSD and skin disabilities." *Id*. VA acted like the kind of pro-claimant expert agency Congress set out to create. It looked at the veteran's application and evidence. Doing so, it saw what the veteran wanted, determined which issues were raised by the evidence, and awarded the most benefits that it could.

The same thing happened here. The veteran applied for TDIU when he already had assigned ratings. As part of that application, he described how his radiculopathy and tinea pedis caused occupational impairment. In response to this, VA assigned him higher ratings for those disabilities. And as required, VA looked at the application and the evidence before dealing with all issues raised by the veteran and the record.

It was not a complicated leap to see that the veteran's TDIU request implicated his radiculopathy and tinea pedis. He referenced the disabilities when applying for TDIU. And because the TDIU application was a request for higher ratings, it included what was simply a renewed (or continued) quest for higher compensation, including for his tinea pedis and radiculopathy. These were claims VA recently denied. Thus, under the statute, the veteran had "previously filed a claim for the same or similar benefits on the same or similar basis." 38 U.S.C. § 101(36)). In other words, he had filed a supplemental claim.

This brings us back to our decision in *Jackson*. Recall that *Jackson* made the point that because "the supplemental claim speaks to the already denied claim, . . . past-due fees would be appropriate." *Jackson (Alexandra)*, 37 Vet.App. at 295. So too here. The veteran's TDIU request was also a request for the same or similar benefits—higher ratings for his tinea pedis and radiculopathy—thereby making the request a supplemental claim following VA's denial of those ratings back in 2020. As such, past-due fees are appropriate for Mr. Chisholm. *See id*.

*E. VA Has Not Limited Supplemental Claims to a Specific Form.*

To resist this conclusion, the Secretary tells us that the veteran's TDIU application could not have been a supplemental claim because it was not submitted on the required form. The problem with this argument is that he hasn't required a specific form for a supplemental claim.

8

To be sure, Congress gave the Secretary broad authority to require specific forms for specific actions. In section 5101, Congress decided that, before VA can pay benefits, the claimant must file "a specific claim in the form prescribed by the Secretary." 38 U.S.C. § 5101(a)(1)(A). And in section 501, Congress gave VA the authority to "prescribe all rules and regulations" including, "the forms of applications by claimants." 38 U.S.C. § 501(a)(2).

But we don't see where VA has exercised that authority to restrict supplemental claims to only one form. Like other agencies, VA must publish "substantive rules of general applicability adopted as authorized by law," "statements of general policy," "rules of procedure," and "descriptions of forms available" in the Federal Register. 5 U.S.C. § 552(a)(1)(C)-(D). And we don't see a firm requirement restricting supplemental claims to a specific form in the Federal Register. Nor does the Secretary give us such a cite. He points us only to VA Form 20-0995 to support his assertion that he prescribed that specific form as the exclusive way of filing a supplemental claim.

When adopting regulations to implement appeals modernization, VA described VA Form 20-0995 as the form claimants would be required to use to file a supplemental claim. 84 Fed. Reg. 138, 163. But this description appears only as part of VA's compliance with the Paperwork Reduction Act of 1995. We can't accept that VA intended to create a substantive requirement about which form to use as part of its compliance with the Paperwork Reduction Act without putting such a requirement in the regulation.[4] *Id.* And as we'll see, such an approach doesn't work with the text of VA's regulations.

Consider VA's use of the indefinite article "a" or "an" when describing the filing requirements. VA's regulation defines a supplemental claim as "any complete claim for a VA

---

[4] "The Paperwork Reduction Act was enacted in response to one of the less auspicious aspects of the enormous growth of our federal bureaucracy: its seemingly insatiable appetite for data." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32 (1990). "The Act prohibits any federal agency from adopting regulations which impose paperwork requirements on the public unless the information is not available to the agency from another source within the Federal Government, and the agency must formulate a plan for tabulating the information in a useful manner. Agencies are also required to minimize the burden on the public to the extent practicable." *Id*. at 32-33. Without writing a primer on the law, we note that it requires VA, like other federal agencies, to provide certain information to the Office of Management and Budget (OMB) to explain why it needs to collect certain information from the public; OMB is meant to consider whether the forms are appropriate and necessary. *See Id*.

Given this purpose, we don't think that statements VA made when complying with Congress's mandate to lessen the burden of paperwork on the American public can be used as a sword to impose substantive filing requirements that are not found in the actual regulation. Congress enacted the law to lessen the weight of federal forms, not as an avenue for agencies to hide substantive rules outside of their regulations.

benefit on an application form prescribed by the Secretary where an initial or supplemental claim for the same or similar benefit on the same or similar basis was previously decided." 38 C.F.R. § 3.1(p)(2) (2024). And the specific regulation dealing with supplemental claims likewise tells us that the claimant may file "a supplemental claim . . . by submitting in writing or electronically a complete application . . . on a form prescribed by the Secretary." 38 C.F.R. § 3.2501 (2024). "[W]hen used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'" *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1 (2d ed. 1954)). Thus, these regulations are best read as requiring the claimant to use an unspecified form prescribed by the Secretary, not a specific form prescribed by the Secretary, when filing a supplemental claim.

VA gets slightly more specific in the regulation describing how to file a claim. In describing what VA will do with an *incomplete* form, the Secretary tells us that "upon receipt of a communication indicating a belief in entitlement to benefits that is submitted . . . on a supplemental claim form prescribed by the Secretary that is not complete," he will notify claimants or their representative of what they must do to complete the application. 38 C.F.R. § 3.155(d)(1)(i)(2024). This requirement at least suggests the existence of a specific supplemental claim form, but it does not prescribe that such a claim form is the *only* way to file the claim.

What's more, that same regulation tells us that VA knows how to limit a claimant to a specific form. In § 3.155(b)(1)(ii), VA limits claimants who want to express their intent to file a claim in writing to using the "prescribed intent to file a claim form." 38 C.F.R. § 3.155(b)(1)(ii). VA even clarifies that "[t]he submission to an agency of original jurisdiction of a signed and dated intent to file a claim, on the form prescribed by the Secretary for that purpose, will be accepted as an intent to file a claim." *Id*. *See also Kriner v. McDonough,* 37 Vet.App. 41, 52-53 (2023) ("[T]here's no ambiguity in VA's intent-to-file rule and that a claimant must submit an intent to file in one of the three enumerated methods.").

To emphasize the point that the Secretary knows how to require specific forms for specific purposes, we note that VA has a regulation that expressly says that unspecified forms will *not* be accepted for certain actions. When explaining how to file a Notice of Disagreement, the Secretary warns that VA won't "accept . . . a Notice of Disagreement . . . [if it] is submitted in any format other than the form prescribed by the Secretary, *including on a different VA form*." 38 C.F.R. § 20.202(d) (2024) (emphasis added).

10

We have been clear that "[w]e don't read regulations in isolation. Instead, we look at them as part of the larger regulatory scheme." *Williams v. McDonough*, 37 Vet.App. 305, 310 (2024). Within this regulatory scheme, we see that VA knows how to limit claimants to specific forms. *See id*. And we consider the fact that VA didn't do that with supplemental claims to be a deliberate choice. *See id*.

VA's regulatory framework therefore leads us to hold that, while a supplemental claim needs to be filed on *a form prescribed* by the Secretary, it need not be filed on a supplemental claim form. And because a request for TDIU is not a standalone claim but an attempt to obtain the correct (higher) rating, an application for TDIU may serve as a supplemental claim when filed after VA has already denied higher ratings for the disabilities at issue.

This is certainly true of the filing here, even if different facts would warrant a different result. Our decision is not meant to answer what every veteran does when filing a TDIU application. And it should not be read to require VA to accept all TDIU applications as supplemental claims for denied rating decisions.

### F. Application to Mr. Chisholm.

What does all this mean for Mr. Chisholm? At bottom, it means that VA denied the veteran higher ratings for two disabilities in its February 2020 rating decision. With the help of Mr. Chisholm, the veteran submitted additional information before VA's denial became final. Despite this earlier denial, the Secretary argues that the April 2022 decision that addressed the rating for those same two disabilities was the initial rating decision.

To make this counterfactual argument work, the Secretary hides behind fact that the veteran applied for TDIU and did not use a supplemental claim form when trying to get more compensation for his disabilities, including tinea pedis and radiculopathy. But as we've said many times, TDIU is not a standalone claim; it is an attempt to get to a total rating.

And so, we reach the unsurprising conclusion that, because VA denied higher ratings for tinea pedis and right lower extremity radiculopathy in February 2020 and the veteran then submitted a claim seeking more compensation for those disabilities, the resulting April 2022 decision was not an initial decision and the TDIU request was a supplemental claim. We thus reverse the Board's contrary conclusion and remand the matter for VA to pay Mr. Chisholm the required fees.

11

### III. CONCLUSION

Based on the above, the Secretary's motion to dismiss is DENIED. The November 15, 2022, Board of Veterans' Appeals decision denying payment of fees based on past-due benefits VA awarded to the veteran in April 2022 is REVERSED and the matter is REMANDED for proceedings consistent with this decision.

TOTH, *Judge*, concurring: I join the opinion in full as I agree that the filing here can be characterized as a supplemental claim and the April 2022 rating decision should not be deemed an initial decision for purposes of 38 U.S.C. § 5904(c). I write separately merely to sound a note of caution against attempting to characterize definitively TDIU applications to make them fit within the three-lane intra-agency appellate framework set out in 38 U.S.C. § 5104C.

Much like the way that something can be *both* a wave and a particle in quantum physics, TDIU has a way of defying all attempts at categorization. Indeed, in the most complicated cases involving numerous and diverging claims streams, it's scarcely an exaggeration to say that TDIU can give the Rule Against Perpetuities a run for its money in terms of difficulty. This, of course, is by design: as a creature of regulation, 38 C.F.R. § 4.16, TDIU was crafted to be optimally flexible to allow VA to grant full benefits whenever a service-connected disability, either individually or in combination with others, prevents a claimant from pursuing gainful employment. VA is always free, if not obligated, to adjudicate TDIU when the issue is properly raised.

Thus, although it *can* satisfy the definition of a supplemental claim for purposes such as 38 U.S.C. § 5110(a)(2), it does not mean that every TDIU application should be treated as such. Nor do I read section 5104C as imposing any limitation on VA's development or adjudication of TDIU.

12