# United States Court of Appeals for the Federal Circuit

---

**JAMES J. PERCIAVALLE,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

**ROBERT J. FLEMING, JR.,**
*Respondent*

---

2023-1117

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-5340, Judge Grant Jaquith.

---

Decided: May 9, 2024

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM; JONATHAN KRISCH, CHRISTA A. SHRIBER,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before TARANTO, STOLL, and STARK, *Circuit Judges.*

TARANTO, *Circuit Judge.*

In 2006, veteran Robert Fleming began applying to the Department of Veterans Affairs (VA), under Title 38 of the United States Code, for disability benefits for service-connected injuries. In May 2016, Mr. Fleming entered into a contingent-fee agreement with James Perciavalle for the latter to serve as his accredited representative before VA. Under the agreement, the fee was to be 20% of "arrearages awarded to [Mr. Fleming] as a result of [Mr. Perciavalle]'s representation before [VA] for [Mr. Fleming's] service connected conditions," and VA was authorized to retain 20% of arrearages to ensure payment of the fee. J.A. 50.

In March 2017, a VA regional office awarded Mr. Fleming past-due benefits—the bulk consisting of compensation reflecting an increased disability rating for service-connected post-traumatic stress disorder (PTSD), and a small portion consisting of special monthly compensation (SMC). VA then ruled that Mr. Perciavalle was statutorily barred from receiving fees on the non-SMC portion of the award. The bar was the version of 38 U.S.C. § 5904(c)(1) that preceded its amendment by the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, § 101, 120 Stat. 3403, 3405–09 (the "Act") (enacted Dec. 22, 2006). Mr. Perciavalle is undisputedly barred from receiving the non-SMC fees if the pre-Act version, rather than the post-Act version, applies to this matter. VA found the pre-Act version applicable based on the date on which Mr. Fleming had filed a particular notice of disagreement with the regional office regarding his PTSD benefits.

On Mr. Perciavalle's appeal, the Board of Veterans' Appeals affirmed the fee denial, agreeing with the regional office that the pre-Act version of the fee provision, not the post-Act version, applies here. The United States Court of Appeals for Veterans Claims (Veterans Court) affirmed the Board's decision. *Perciavalle v. McDonough*, No. 20-5340, 2022 WL 3016250 (Vet. App. July 29, 2022) (*Decision*). We now conclude that the Veterans Court relied on an incorrect legal standard in determining which version of § 5904(c)(1) applies, and we also conclude that the post-Act version is the applicable one, based on the material facts that are not in dispute. We therefore reverse and remand.

I

A

The sole issue on appeal pertains to 38 U.S.C. § 5904, which permits veterans to retain accredited agents or attorneys to present and prosecute VA benefit claims and sets forth restrictions on, among other things, when agents and attorneys may charge for their services. That provision changed over time. The dispute before us relates to which version of this fee statute applies.

Between 1988 and 2007, veterans' agents and attorneys were prohibited from charging fees "with respect to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case." 38 U.S.C. § 5904(c)(1) (2000).[1] In 2006, Congress modified that prohibition, permitting veterans' agents and attorneys to charge for their services from an earlier point in the

---

[1]    The provision was originally enacted as 38 U.S.C. § 3404(c)(1) but was renumbered in 1991 as 38 U.S.C. § 5904(c)(1). *See* Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105, 4108 (1988); Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-40, 105 Stat. 187, 238–39.

administrative process, no longer prohibiting such charging for work before a final Board *decision*. Veterans Benefits, Health Care, and Information Technology Act of 2006, § 101(c)–(d), 120 Stat. at 3407–08; *see Military-Veterans Advocacy v. Secretary of Veterans Affairs*, 7 F.4th 1110, 1135–36 (Fed. Cir. 2021) (reviewing the statutory history of limitations on attorney's fees for VA benefits claims). As amended, the statutory prohibition applies only "with respect to services provided before the date on which a notice of disagreement is filed with respect to the case." 38 U.S.C. § 5904(c)(1) (2006).[2] Under the post-Act statute, charging is thus permitted for services from when an appeal to the Board is *initiated*, because a "notice of disagreement" is a filing that initiates a veteran's effort to seek Board review of a decision by an agency of original jurisdiction (regional office). 38 U.S.C. § 7105(a) ("Appellate review shall be initiated by the filing of a notice of disagreement in the form prescribed by the Secretary" of Veterans Affairs.).

It is undisputed that there was no final Board decision in Mr. Fleming's case. *See* Perciavalle's Opening Br. at 8; Secretary's Response Br. at 7 n.2; J.A. 74. It is therefore also undisputed that, if the pre-Act version of the statute applies, Mr. Perciavalle is not entitled to the fees in dispute. In contrast, if the post-Act version applies, the timing rule of § 5904(c)(1) does not bar fees. Other possible constraints on fees (*e.g.*, that the fees awarded reflect the contribution to and responsibility for benefits awarded), which are not before us, are immaterial if the pre-Act version's time bar applies.

---

[2]    This subsection was amended again in 2017. *See* Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105, 1110; 38 U.S.C. § 5904(c)(1) (2018). Neither party argues that the 2017 amendments apply to this case.

B

1

In 2006, Robert Fleming, a veteran who had served during the Vietnam era, filed a claim with VA seeking disability-compensation benefits under 38 U.S.C. § 1110 for PTSD, among other conditions. In a September 2006 decision, VA determined that Mr. Fleming had PTSD that was connected to his military service and granted a 30% disability rating, while also addressing several other conditions, including a shrapnel fragment in his left wrist and injury to muscle group XVII (both of which were service connected). J.A. 16. In October 2006, Mr. Fleming filed a notice of disagreement with the PTSD rating decision. J.A. 17.

In August 2007, while the PTSD appeal was pending, Mr. Fleming filed a new claim for benefits for additional disabilities. In November 2008, Mr. Fleming requested a total disability rating based on individual unemployability (TDIU), citing PTSD and residuals of a traumatic brain injury as the service-connected disabilities that prevented him from securing substantially gainful employment. J.A. 18–19; *see also* J.A. 112. In March 2009, VA issued a decision addressing the TDIU request raised in Mr. Fleming's November 2008 filing and thirteen additional "claims not currently on appeal." J.A. 20–33. In relevant part, VA denied Mr. Fleming's request for entitlement to a TDIU, determining that Mr. Fleming did not meet scheduler requirements (*i.e.*, he did not have either (1) one service-connected disability evaluated at 60% disabling or (2) two or more service-connected disabilities, one of which was evaluated at 40% disabling and which together had a combined evaluation of 70% or more), and that the evidence failed to show that his service-connected disabilities alone precluded all forms of substantially gainful employment. J.A. 32. VA also declined to submit Mr. Fleming's case for extraschedular consideration. J.A. 32. In the same ruling,

VA addressed many other conditions, including the shrapnel fragment in his left wrist and injury to muscle group XVII. J.A. 23–25.

In May 2009, Mr. Fleming filed a notice of disagreement with the March 2009 decision. J.A. 37. In that notice of disagreement, Mr. Fleming argued, among other things, that he was entitled to a TDIU because his "evaluation percentage for PTSD should be at 70% minimum" and that "individual unemployability clearly is met." J.A. 37. The Board, when it addressed the appeal, recognized that the May 2009 notice of disagreement sought to place before it the TDIU issue as well as numerous other matters, including the left-wrist shrapnel fragment and muscle group XVII matters. *See* J.A. 40–41.

All claims raised by Mr. Fleming remained on appeal before the Board for several years, until in January 2013 the Board remanded all of Mr. Fleming's claims to VA. *See* J.A. 40–47. On May 9, 2016, while these claims remained pending, Mr. Perciavalle entered into a contingent fee agreement with Mr. Fleming. J.A. 50. As permitted by 38 U.S.C. § 5904(d), the fee agreement set Mr. Perciavalle's rate at "20% (twenty percent) of any arrearages awarded . . . as a result of [his] representation before the Department of Veterans Affairs for [Mr. Fleming's] service[-]connected conditions." J.A. 50.

On March 2, 2017, VA increased its evaluation of Mr. Fleming's PTSD to 100% disabling, effective April 11, 2008. J.A. 56–61. VA also granted Mr. Fleming entitlement to special monthly compensation, under 38 U.S.C. § 1114(s), based on his being housebound. J.A. 61–62; *see also id.* at 62 (also recognizing eligibility for Dependents' Educational Assistance under 38 U.S.C. ch. 35). Given the 100% PTSD rating assignment, Mr. Perciavalle withdrew Mr. Fleming's TDIU appeal the same day. J.A. 225.

2

VA then had to decide whether to pay to Mr. Perciavalle the 20% of the award referred to in the fee agreement he had with Mr. Fleming, which had been filed with VA. On March 13, 2017, VA issued a decision (correcting a March 10 decision) on that issue. J.A. 73–76. VA granted Mr. Perciavalle a fee consisting of 20% of the SMC amount but denied him any fee from the non-SMC amount.

In making that decision, VA looked to whether a notice of disagreement was filed on or after June 20, 2007. J.A. 74. VA cited 38 C.F.R. § 14.636(c)(2), which refers to that date. The date itself derives from the 2006 Act's "effective date" provision, which says that the relevant amendments "shall take effect" 180 days after the enactment date—June 20, 2007, is 180 days after the enactment date of December 22, 2006—and

> shall apply with respect to services of agents and attorneys that are provided with respect to cases in which notices of disagreement are filed on or after that date.

§ 101(h), 120 Stat. at 3408.

VA granted fees in the amount of 20% of the SMC award because entitlement to special monthly compensation was "a downstream issue to both the NOD filed on October 31, 2006[,] and the NOD filed on May 12, 2009." J.A. 75. In so deciding, VA treated the filing of the May 2009 notice of disagreement—after June 20, 2007—as sufficient to apply the post-Act statutory provision to the SMC portion of the fee request. But VA denied fees for the past-due benefits based on the increased PTSD rating because "[t]he NOD in this case was filed on October 31, 2006"—before June 20, 2007—which, VA concluded, meant that the pre-Act version of the statutory provision was the applicable one for that portion of the fee request. J.A. 74. As is undisputed, if the pre-Act version applies, Mr. Perciavalle

was not entitled to charge fees because there had been no final Board decision. J.A. 74.

On March 14, 2017, the day after VA's fee ruling, Mr. Perciavalle filed a notice of disagreement with the decision denying fees based on the non-SMC part of the compensation award. J.A. 77–79. In April 2020, the Board issued a decision agreeing with VA's fees denial. J.A. 108–17. The Board determined that the May 2009 notice of disagreement—after June 20, 2007—did not support the disputed fee request because "the submission of the May 2009 notice of disagreement did not trigger [Mr. Perciavalle's] eligibility to receive attorney fees based on [Mr. Fleming's] TDIU claim." J.A. 115; *see also* J.A. 114–17. The Board explained that it "must find that the TDIU claim [which was part of what was covered by the May 2009 notice of disagreement] *only* arose from the initial January 2006 rating decision and the October 2006 notice of disagreement that initiated an appeal of the rating." J.A. 115. The Board stated that the May 2009 notice of disagreement "did not have the legal effect of a notice of disagreement for purposes of perfecting an appeal" because the issue of entitlement to a TDIU was already "before the Board for consideration pursuant to *Rice v. Shinseki*, 22 Vet. App. 447, 454–55 (2009)." J.A. 114–15.

Mr. Perciavalle appealed to the Veterans Court, which issued a decision in July 2022. Citing its decision in *Cameron v. Shinseki*, the Veterans Court stated that the amendment made to § 5904(c)(1) "'only applies to cases where the NOD was filed after June 19, 2007.'" *Decision*, 2022 WL 3016250, at *2 (quoting 26 Vet. App. 109, 113 (2012), *aff'd*, 561 F. App'x 922 (Fed. Cir. 2014)). The court then determined that it found no "clear error in the Board's determination that the October 2006 NOD initiated the claim stream that led to grant of benefits in March 2017." *Id.* Finally, the court noted that "the record does not show any [evidence], outside of the October 2006 letter, that

could be construed as an NOD challenging the PTSD rating." *Id.* at *3.

The Veterans Court entered its final judgment on August 22, 2022, and Mr. Perciavalle timely filed his appeal on October 20, 2022. We have jurisdiction under 38 U.S.C. § 7292(a), (c).

## II

Our authority to review decisions of the Veterans Court is limited by statute. We have the authority to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a); *Flores-Vazquez v. McDonough*, 996 F.3d 1321, 1325 (Fed. Cir. 2021). We may decide "all relevant questions of law" and will "set aside any regulation or any interpretation thereof," if relied upon in the decision of the Veterans Court, that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7292(d)(1)(A). But where (as here) no constitutional question is presented, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). We decide legal issues, including statutory interpretations, de novo. *Stanley v. Principi*, 283 F.3d 1350, 1354 (Fed. Cir. 2002); *Blubaugh v. McDonald*, 773 F.3d 1310, 1312 (Fed. Cir. 2014).

## A

The Veterans Court erred as a matter of law in its understanding of the legal standard that governs the determination of whether the post-Act or pre-Act version of 38 U.S.C. § 5904(c)(1) applies in a case.

Where Congress has provided clear instructions as to the effective date of a statutory amendment and has specified the cases to which the amendment applies, those

instructions govern. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994); *Schaeffler Group USA, Inc. v. United States*, 786 F.3d 1354, 1360 (Fed. Cir. 2015). Congress gave such an instruction in enacting the Veterans Benefits, Health Care, and Information Technology Act of 2006. Congress explicitly prescribed the effective date of the statutory amendments, explaining that they "shall take effect on [June 20, 2007,] and shall apply with respect to services of agents and attorneys that are provided with respect to cases in which notices of disagreement are filed on or after that date." § 101(h), 120 Stat. at 3408.

That language has a clear "ordinary meaning" on its face. *See Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1319 (Fed. Cir. 2021) (starting analysis with ordinary meaning). The language makes it a sufficient condition to trigger application of the post-Act fee provision that a notice of disagreement was filed in a veteran's case on or after June 20, 2007. That condition is not qualified according to whether another notice of disagreement also was filed in the same case before June 20, 2007. We have been shown, and have uncovered, no legislative history that contradicts that meaning, much less in a way that would control over what the words mean.

We have previously addressed the meaning of the term "case" as used in the post-Act version of § 5904(c)(1). We have taken a broad view of the term, stating that "a 'case' within the meaning of Section 5904(c) encompasses 'all potential claims *raised by the evidence*, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled . . . .'" *Jackson v. Shinseki*, 587 F.3d 1106, 1109 (Fed. Cir. 2009) (emphasis and alteration in original) (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)). Given the similarities between the text of the effective-date provision and § 5904(c)(1), we see no basis for departing from that definition of the term in interpreting § 101(h). *See* § 101(h), 120 Stat. at 3408 (stating the 2006 amendments shall apply "with respect to cases in

which notices of disagreement are filed" after June 20, 2007); 38 U.S.C. § 5904(c)(1) (2006) (allowing agents and attorneys to charge fees after "a notice of disagreement is filed with respect to the case"). Therefore, as long as a notice of disagreement was filed on or after June 20, 2007, in the same "case" in which counsel is seeking fees as the term is defined in *Jackson*, the post-Act version of 38 U.S.C. § 5904(c)(1) applies.

Significantly, this understanding does not foreclose application of a limitation, consistent with the text and compelled by purpose and context, on what constitutes a filing of a notice of disagreement in a case (on or after June 20, 2007). *See Transpacific Steel*, 4 F.4th at 1323 (discussing context and purpose within textual limits); *Utility Air Regulatory Group v. Environmental Protection Agency*, 573 U.S. 302, 320 (2014) (reiterating the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (internal quotation marks omitted)). Thus, a frivolous or "sham" notice of disagreement, for instance, or one that serves no function in advancing the adjudication of entitlement to benefits and is filed solely for the purpose of permitting recovery of fees, may not trigger eligibility for fees. This limitation reflects a background legal principle, familiar from many areas of law, that filings are properly denied legal recognition or protection (*i.e.*, are not cognizable) for various purposes if they are sufficiently devoid of substance. *See*, *e.g.*, *Ex parte Davenport*, 31 U.S. (6 Pet.) 661, 664 (1832) (per Story, J.) (interpreting statute to prevent giving effect to a party's "contrivances": "He should not by sham pleadings, or by other pretended defences, be allowed to avail himself of a postponement of judgment . . . ."); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993) (sham filings denied antitrust immunity); *BE & K Construction Co. v. National Labor Relations Board*, 536 U.S. 516 (2002) (sham litigation subject to

NLRB injunctions).  Application of that principle here is required by the plain purpose of § 101(h).  Allowing *any* filing of a notice of disagreement on or after June 20, 2007, even one having no legitimate purpose in the VA benefit system, to change which version of the fee provision applies—that is, allowing naked manipulation of the effective date—would defeat the self-evident function of temporally limiting availability of the new version of the fee provision.

The Veterans Court in this case did not cite or quote the § 101(h) effective-date provision, and its reasoning departs from the clear meaning of the provision.  The Veterans Court quoted its earlier decision's statement that "the December 2006 amendment to 38 U.S.C. § 5904(c)(1) provided that the 'change only applies to cases where *the* NOD was filed after June 19, 2007.'"  *Decision*, 2022 WL 3016250, at *2 (emphasis added) (quoting *Cameron*, 26 Vet. App. at 113).  But the Veterans Court cannot be understood to have meant that there is only one notice of disagreement per "case," which is the word used in § 101(h).  The Secretary recognizes that there can be more than one.  Secretary's Response Br. at 14 (stating that "there can be multiple NODs as VA successively addresses the five different elements of a case, *Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (veteran status, disability, nexus to service, compensation level, and effective date)").  The Secretary cites decisions of ours also so recognizing.[3]

---

[3]    In arguing that there can be only one notice of disagreement for each "element" of a case, the Secretary cites *Grantham v. Brown*, 114 F.3d 1156, 1158–59 (Fed. Cir. 1997), and *Barrera v. Gober*, 122 F.3d 1030, 1031–32 (Fed. Cir. 1997).  *See* Secretary's Response Br. at 14.  In both decisions, *Grantham*, 114 F.3d at 1158–59; *Barrera*, 122 F.3d at 1032, we recognized that there could be multiple notices of disagreement in a case and held that the new chapter 72

Rather, the Veterans Court took an approach that reflects a search for what the Secretary labels the single "operative NOD" for fee purposes. Secretary's Response Br. at 10–16. Specifically, it approved the Board's focus on identifying "which NOD precipitated the claim stream" that "led to grant of benefits." *Decision*, 2022 WL 3016250, at \*2; *see also id.* at \*1 (explaining that "the Board refused to pay [Mr. Perciavalle] any fees from Mr. Fleming's past-due PTSD benefits because the award arose from an NOD filed in October 2006" and that "VA informed Mr. Perciavalle that he was not entitled to any fees related to the PTSD grant because that appeal stemmed from an NOD that was submitted prior to June 2007"). But that approach departs from the statute.

The language of § 101(h) states that the amended version of the statute shall apply "with respect to cases in which notices of disagreement are filed on or after" June 20, 2007. § 101(h), 120 Stat. at 3408. It does not presuppose that there is only one notice of disagreement in a case. It does not call for identifying a notice of disagreement for a particular "element" in a case. It does not call for disregarding all notices of disagreement except one (or perhaps more than one) that can be identified as initiating an appeal that led to the grant of benefits. It simply asks if there was *any* (cognizable) notice of disagreement filed on or after June 20, 2007, in the case for which the veteran's agent or attorney seeks fees. If so, the amended statute applies.

---

of Title 38, creating the Veterans Court and its jurisdiction, applied to cases in which, where there were two notices of disagreement, one was filed on or after the enactment of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (enacted Nov. 18, 1988). *See* § 402, 102 Stat. at 4122 (providing that new "Chapter 72 . . . shall apply with respect to any case in which a notice of disagreement is filed . . . on or after the date of the enactment of this Act").

B

The foregoing analysis means that the Veterans Court's decision must, at a minimum, be set aside because it rests on a legally incorrect understanding of the standard that governs which version of the fee provision (pre-Act or post-Act) applies to this case. But it is permissible, and useful, for us to go further and address this case in particular. This is so whether or not we adopt the Veterans Court's statement, in an earlier case, that "[w]hether a document is an NOD is a question of law." *Beyrle v. Brown*, 9 Vet. App. 24, 28 (1996). "'[W]here adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law.'" *Kelly v. Nicholson*, 463 F.3d 1349, 1352–53 (Fed. Cir. 2006) (quoting *Halpern v. Principi,* 384 F.3d 1297, 1306 (Fed. Cir. 2004)); *see Sellers v. Wilkie*, 965 F.3d 1328, 1338 (Fed. Cir. 2020); *Robinson v. O'Rourke*, 891 F.3d 976, 979 (Fed. Cir. 2018); *Comer v. Peake*, 552 F.3d 1362, 1366 (Fed. Cir. 2009); *Groves v. Peake*, 524 F.3d 1306, 1309–10 (Fed. Cir. 2008). The Secretary has not shown that the facts that are material under the correct standard are in dispute, and on those facts, the post-Act version of the fee statute applies.

The veteran in this case filed a notice of disagreement on or after June 20, 2007—namely, the May 2009 notice of disagreement challenging VA's March 2009 decision. Under the correct legal standard of § 101(h), that notice of disagreement cannot be disregarded, as the Veterans Court and the Board thought, based simply on a determination that it did not lead to the award of past-due benefits for disability based on PTSD or was unnecessary to put issues related to PTSD, including entitlement to TDIU on that basis, before the Board.

It is undisputed that the May 2009 notice of disagreement, far from being a sham, was a legitimate notice of disagreement serving a legitimate function in the VA

system—at least because it included a variety of issues separate from PTSD issues. The Board did not disagree; indeed, it recognized that thirteen such issues listed in the March 2009 VA decision, *see* J.A. 34–36, were before it on appeal as a result of the May 2009 notice of disagreement. J.A. 40–41; *see also* J.A. 53 (VA acknowledging that the Board interpreted the May 2009 notice of disagreement as "inclusive of all determinations" in VA's March 2009 decision). The Secretary, in this court, did not disagree on this point either. Oral Arg. at 22:45–23:13.

There is also no dispute about the facts determining whether, under the definition set forth in *Jackson*, the May 2009 notice of disagreement was part of the "case" for which the fees at issue were sought. As to the request for TDIU based on PTSD made in that notice of disagreement, the Board, in its fee-denial decision, disregarded the May 2009 notice on the ground that the October 2006 notice was the operative one for the TDIU issue. J.A. 115–16. At oral argument, government counsel stated that at least Mr. Fleming's entitlement to a TDIU is properly considered part of the same "case" as the PTSD claim. Oral Arg. at 34:49–35:30.

Even setting aside the TDIU-entitlement issue, the Secretary has not disputed that the May 2009 notice of disagreement comes within the "case" language of § 101(h) as that language is understood based on *Jackson*. In particular, the Secretary has not argued that all thirteen additional issues raised in the May 2009 notice of disagreement concern conditions not sufficiently evident in the record before VA at the time of the September 2006 decision to have been part of the "case" that included the PTSD claim.[4]

---

[4]    As we have noted, at least two of the conditions covered by the May 2009 notice of disagreement—the shrapnel fragment in Mr. Fleming's left wrist and injury to muscle

Rather, the Secretary's only arguments relating to the scope of the case focus on claim "elements" and single out an "operative" notice of disagreement. Those arguments do not create a disputed issue under the *Jackson* standard for "case" in § 101(h).

For the foregoing reasons, we conclude as a matter of law, based on the material facts that are not disputed, that the May 2009 notice of disagreement is a notice of disagreement that, under the § 101(h) effective-date provision, makes applicable to Mr. Perciavalle's fee request the post-Act version of 38 U.S.C. § 5904(c)(1). We reverse the Veterans Court's ruling to the contrary.

C

The appeal before us relates solely to Mr. Perciavalle's ability to charge a fee for his services under 38 U.S.C. § 5904(c)(1). Congress has imposed other constraints on fee awards. *See* 38 U.S.C. § 5904(a)(5), (c)(3)(A); 38 C.F.R. § 14.636(e)–(f), (h); *see also Scates v. Principi*, 282 F.3d 1362, 1366 (Fed. Cir. 2002) (explaining that "an attorney with a contingent fee contract . . . may receive only a fee that fairly and accurately reflects his contribution to and responsibility for the benefits awarded"). Nothing about those constraints, including whether they have been raised or may yet be raised, is before us in this appeal.

III

We have considered the government's additional arguments and find them unpersuasive. Because we conclude that the Veterans Court erred in concluding that the 2006 amendment to 38 U.S.C. § 5904(c)(1) does not apply to Mr.

---

group XVII, *see* J.A. 40–41 (2013 Board listing of issues raised by May 2009 notice of disagreement)—were actually addressed in the September 2006 VA decision that gave rise to the October 2006 notice of disagreement, J.A. 16.

Perciavalle's fee-entitlement claim, we reverse the Veterans Court's decision and remand the matter for further proceedings consistent with this opinion.

Costs awarded to Mr. Perciavalle.

**REVERSED AND REMANDED**