# United States Court of Appeals for the Federal Circuit

---

**SHANNON HOLSTEIN,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-1451

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-1660, Judge Scott Laurer.

---

Decided: January 30, 2026

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, argued for claimant-appellant. Also represented by KENNETH M. CARPENTER.

PATRICK ANGULO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE; SHEKEBA MORRAD, CHRISTA A. SHRIBER, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, REYNA, and CUNNINGHAM, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Shannon Holstein is an attorney who represented Lester L. Dean, Jr. ("the veteran") in the benefits adjudication process before the Department of Veterans Affairs ("the VA"). Holstein appeals the decision of the Court of Appeals for Veterans Claims ("the Veterans Court"), which affirmed a decision of the Board of Veterans' Appeals ("the Board"), denying Holstein's request for additional attorney's fees arising from her representation of the veteran. *Holstein v. McDonough*, 2022 WL 10968003 (Vet. App. Oct. 19, 2022); J.A. 161–73 (Board Decision). For the following reasons, we affirm.

## BACKGROUND

In March 2007, the veteran filed a claim for compensation for a neck injury, which was denied by the VA Regional Office ("the RO") for lack of service connection. *Holstein*, 2022 WL 10968003, at \*2; J.A. 33–37. In July 2008, the veteran, with aid from a non-attorney representative, filed a notice of disagreement ("NOD") appealing the denial to the Board. *Holstein*, 2022 WL 10968003, at \*2; J.A. 38–40. Several years later, in August 2012, while the neck claim was still pending, the veteran retained Holstein to represent him in his effort to secure benefits. *Holstein*, 2022 WL 10968003, at \*2; J.A 41–44. The veteran and Holstein entered into a contingency fee agreement directing the VA to pay Holstein twenty percent "of the gross amount of any past due VA benefits recovered for [the] veteran[]." J.A 41; *Holstein*, 2022 WL 10968003, at \*2.

Soon after entering into the representation agreement, Holstein filed an additional claim on behalf of the veteran, seeking an award for compensation for service-connected post-traumatic stress disorder ("PTSD"). *Holstein*, 2022 WL 10968003, at \*2; J.A. 45. Additionally, Holstien submitted new evidence and argument to the Board in support

of the veteran's pending neck claim, including a claim for total disability based on individual unemployability ("TDIU") based, *inter alia*, on the veteran's neck injury and PTSD. *Holstein*, 2022 WL 10968003, at *2; J.A. 45–55.

In July 2014, the Board issued a decision. J.A. 56–69. It first found that the veteran's neck injury was service connected; the Board thus remanded the neck claim to the RO for a rating decision. J.A. 58, 66–67. The Board then noted the veteran's claim for TDIU, but concluded that it did not have jurisdiction over the claim because it had not yet been addressed by the RO. J.A. 58. The Board thus "referred" the TDIU claim to the RO to address it in the first instance. J.A. 58.

Without any additional appeals, the RO eventually granted the veteran $83,801.19 in past-due benefits for the neck injury and PTSD, as well as TDIU, $28,767.65 of which was solely based on the neck injury. *See* J.A. 121–22.

In December 2014, the RO issued a decision regarding attorney's fees. J.A. 120–23. Pursuant to 38 U.S.C. § 5904(c)(1) (2012), which states that an attorney may not collect fees from services provided to a veteran "before the date on which a[n] [NOD] is filed with respect to the case," the RO stated that it would pay Holstein $5,753.53—twenty percent of the past-due benefits relating to the neck injury claim—the only claim appealed to the Board in an NOD. J.A. 122; *see also* J.A. 150–51.

Holstein appealed the attorney's fees decision to the Board, seeking, in relevant part, fees arising out of the work she did in securing the veteran benefits for his PTSD. The Board affirmed the RO's refusal to grant Holstein fees relating to the PTSD claim. J.A. 169. Holstein then appealed to the Veterans Court, which again rejected her argument that she was entitled to fees relating to the PTSD claim. Because the Veterans Court determined that the July 2008 NOD appealing the denial of service connection

for the veteran's neck injury was unrelated to the veteran's PTSD claim, it concluded that the PTSD claim was not part of the same "case" for which the July 2008 NOD was filed, and thus affirmed the Board's decision that Holstein could not collect attorney's fees relating to the PTSD claim under § 5904(c)(1) (2012). *Holstein*, 2022 WL 10968003, at *4–5.

Holstein timely appealed. We have jurisdiction under 38 U.S.C. § 7292(a).

## DISCUSSION

We have the authority to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a). We may decide "all relevant questions of law" and will "set aside any regulation or any interpretation thereof," if relied upon in the decision of the Veterans Court, that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 7292(d)(1). Where no constitutional question is presented, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). No such question is presented here. We decide legal issues, including questions of statutory interpretation, *de novo. Blubaugh v. McDonald*, 773 F.3d 1310, 1312 (Fed. Cir. 2014).

## I

Holstein argues on appeal that the Veterans Court misconstrued the term "case" as used in 38 U.S.C. § 5904(c)(1) (2012) in denying her attorney's fees relating to the PTSD claim. We disagree.

## A

We start with a brief overview of the history of attorney representation in the benefits adjudication process and then turn to our caselaw construing the term "case" as used

in § 5904(c)(1) (2012) and related provisions. Congress has several times changed the point at which a veteran may pay for attorney representation in the benefits adjudication process, with each change moving the point earlier in the process. *See Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1135–36 (Fed. Cir. 2021) (discussing the history of attorney representation in the benefits adjudication process). At issue in this appeal is the version of § 5904(c)(1) enacted in the Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, § 101, 120 Stat. 3403, 3405–09 ("the Act") (Dec. 22, 2006), which permitted attorney payment only after an NOD—an appeal of the Board's final decision—has been filed.[1] Specifically, this version of § 5904(c)(1) provides, in relevant part:

> [A] fee may not be charged, allowed, or paid for services of agents and attorneys with respect to services provided *before the date on which a[n] [NOD] is filed with respect to the case.*

38 U.S.C. § 5904(c)(1) (2012) (emphasis added). The accompanying legislative remarks explain that permitting attorney involvement only after an NOD has been filed was designed to preserve the non-adversarial nature of the initial part of the claims process while providing veterans with the assistance of an attorney when the veteran is faced with the complexities of appealing a prior adverse decision. *See Mil.-Veterans Advoc.*, 7 F.4th at 1136.

Although the point at which a veteran may pay an attorney to represent him or her in the benefits adjudication process has changed several times, our decisions have

---

[1]    Although the provision was enacted in 2006, it was only added to the United States Code in 2012. Accordingly, we refer to the provision as "the 2006 version," but cite its section in the United States Code as 38 U.S.C. § 5904(c)(1) (2012).

consistently taken a broad view of what the term "case" means as used in § 5904(c)(1) (2012) and related provisions. In *Jackson v. Shinseki*, we construed the term as used in the 2006 version's predecessor, which prohibited payment of attorney's fees for services performed "before the date on which the Board[] first makes a final decision in the case." 587 F.3d 1106, 1109 (Fed. Cir. 2009); 38 U.S.C. § 5904(c)(1) (2000). In light of the "liberal manner" in which the VA must construe a veteran's claim, we concluded that a "case" is defined by "all [the] potential claims *raised by the evidence*, applying all relevant laws and regulations, *regardless of whether the claim is specifically labeled*." *Jackson*, 587 F.3d at 1109 (second emphasis added) (citations omitted); *see also* 38 C.F.R. § 3.103(a) ("[I]t is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government.").

In *Perciavalle v. McDonough*, we construed the term "case" in the context of deciding whether the 2006 version of § 5904(c)(1) or its predecessor governed an attorney's request for fees. 101 F.4th 829, 836 (Fed. Cir. 2024). We accordingly looked to the Act's effective date provision, *id.*, which stated that the 2006 version would take effect 180 days after enactment and "shall apply with respect to services of agents and attorneys that are provided *with respect to cases in which notices of disagreement* are filed on or after that date." § 101(h), 120 Stat. at 3408 (emphasis added). Because the effective date provision used almost identical language—"with respect to cases"—as the predecessor provision at issue in *Jackson*, we determined that *Jackson*'s construction applied to the effective date provision. *Perciavalle*, 101 F.4th at 836. We thus explained that "as long as a notice of disagreement was filed [on or after 180 days after enactment], in the same 'case' in which counsel is seeking fees as the term is defined in *Jackson*, the [2006] version of 38 U.S.C. § 5904(c)(1) [requiring an NOD to be filed] applies." *Id.*

Furthermore, we explicitly rejected the Veterans Court's construction of the effective date provision—"identif[ying]" the particular NOD "that led to the grant of benefits" and applying the 2006 version of § 5904(c)(1) only to those NODs filed on or after the effective date. We reasoned that such a requirement would contravene *Jackson*'s admonition of defining a case by how it is "specifically labeled." *Id.* at 836. Rather, we reiterated that the effective date provision "simply asks if there was *any* (cognizable) notice of disagreement filed on or after [the effective date] in the case for which the veteran's . . . attorney seeks fees. If so, the amended statute applies." *Id.* at 837 (emphasis in original).

## B

Both Holstein and the Government seem to agree that *Jackson*'s construction of the term "case" applies here. *See* Open. Br. 9, Reply Br. 7; Resp. Br. 13–14. We likewise agree and see no reason to depart from our prior interpretation given the similarities between the 2006 version of § 5904(c)(1) and its predecessor. As just noted, such an approach was taken in *Perciavalle* when construing the effective date provision of the Act. The sole issue here is thus whether the Veterans Court construed the term "case" in accord with *Jackson*. We conclude that it did.

In denying Holstein attorney's fees relating to the PTSD claim, the Veterans Court stated that for a separate claim to be considered part of a "case in the context of section 5904," the separate claim requires "some connection" to a matter already "adjudicated and appealed" in an NOD. *Holstein*, 2022 WL 10968003, at *5 (quotations and citation omitted). And because it determined that the PTSD claim had no such connection to the denial of service connection for the neck injury appealed in the July 2008 NOD, the Veterans Court concluded that Holstein was correctly refused fees relating to the PTSD claim. *Id.*

The Veterans Court's determination that the PTSD claim had no connection to the July 2008 NOD demonstrates that it properly construed "case" under § 5904(c)(1) (2012) in accord with *Jackson*. If the evidence underlying the July 2008 NOD had raised a PTSD claim, it is axiomatic that there would have been "some connection" between the two. *See id.* Therefore, by concluding that no such connection existed, the Veterans Court *necessarily* determined that the evidence before the Board at the time it adjudicated the July 2008 NOD did not raise the PTSD claim, a conclusion entirely consistent with *Jackson*'s evidence-focused construction of the term "case."

Holstein makes two arguments in support of her contention that the Veterans Court misconstrued the term "case" as defined in *Jackson*. First, relying on *Perciavalle*'s statement that the effective date provision "simply asks if there was *any* (cognizable) notice of disagreement filed on or after [the effective date] in the case for which the veteran's agent or attorney seeks fees," *see Perciavalle*, 101 F.4th at 837, she contends that the "only predicate" for collecting fees relating to the services performed in securing a veteran benefits is the filing of an NOD. Open. Br. 9 (emphasis omitted). That is, Holstein asserts that once *any* NOD is filed, a veteran's case "expand[s]" to include all other claims subsequently brought before the VA. Open. Br. 14. Thus, in Holstein's view, she is entitled to collect fees relating to the PTSD claim because the PTSD claim was filed after the July 2008 NOD. Open. Br. 16.

We disagree. *Perciavalle* explicitly stated that the NOD must be filed in "the same 'case' in which counsel is seeking fees *as the term is defined in Jackson*." 101 F.4th at 836 (emphasis added). And as just noted above, the Veterans Court conducted such an analysis, concluding that the PTSD claim was necessarily not "raised by the evidence" at the time the July 2008 NOD was filed, and thus was not part of the same "case." *See Holstein*, 2022 WL 10968003, at *5.

Second, Holstein points to an additional statement in the Veterans Court's decision that she asserts demonstrates its misconstruction of "case." Specifically, she points to the Veterans Court's statement that "a valid NOD *must specify the issue* a claimant is appealing" for a claim to be considered part of the "case" under § 5904(c)(1). *Holstein*, 2022 WL 10968003, at *3 (emphasis added); *see* Open. Br. 12. In Holstein's view, that additional statement indicates that the Veterans Court contravened *Jackson*'s and *Perciavalle*'s admonition of a requirement that a claim must be "specifically labeled" as such for it to be considered part of the "case" under § 5904(c)(1). Open. Br. 12 ("The decision of the Veterans Court erroneously imposed a specificity requirement on the NOD.").

We again disagree. Indeed, while those statements, taken in isolation, could be read to suggest that the Veterans Court imputed a specific labeling requirement into the construction of "case," which is prohibited by *Jackson*, such dissection of the Veterans Court's decision ignores, as just recounted above, its proper construction (and application) of the term "case" in § 5904(c)(1) (2012) as containing no such specificity requirement, consistent with our caselaw. We accordingly see no basis to disturb the Veterans Court's decision.

## CONCLUSION

We have considered Holstein's remaining arguments but find them unpersuasive. For the reasons provided, we affirm the Veterans Court's decision.

## **AFFIRMED**

### COSTS

No costs.